UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                              )
THE COMMITTEE FOR THE                      )
PRESERVATION OF THE SEATTLE          )    No. C08-1700RSL
FEDERAL RESERVE BANK BUILDING, )
                                                              )
                    Plaintiff,                       )
     v.                                                        )
                                                              )    ORDER GRANTING PLAINTIFF'S
FEDERAL RESERVE BANK OF SAN       )    MOTION FOR SUMMARY
FRANCISCO, SEATTLE BRANCH, *et al.*, )   JUDGMENT
                                                              )
                    Defendants.                 )
_____)

        This matter comes before the Court on "Plaintiff's Motion for Summary Judgment" (Dkt. # 48) and "Defendant's Cross-Motion for Summary Judgment" (Dkt. # 50). Plaintiff filed this action to prevent the sale and demolition of the Seattle branch building of the Federal Reserve Bank of San Francisco ("FRB"). The building is eligible for inclusion in the National Register of Historic Places. Plaintiff asserts, and for purposes of this litigation the FRB is willing to concede, that the FRB is a federal agency subject to the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA"). Plaintiff seeks a declaration that the FRB failed to comply with NEPA and NHPA when it agreed to sell the building to an undisclosed buyer, the invalidation of the purchase and sale agreement, an order directing the FRB to vacate actions it took before the Seattle Landmarks Preservation Board, and an injunction against further actions without compliance with applicable law.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

# BACKGROUND[1]

The Seattle branch building of the Federal Reserve Bank of San Francisco was constructed in 1949-1950 at 1015 Second Avenue. The building was designed by William Bain Sr., of the local architecture firm Naramore, Bain, Brady, and Johanson ("NBBJ"). FRB operations at the building declined over time. By December 2004, the FRB was in the process of obtaining the necessary approvals to construct a new branch building in Renton, Washington. The Seattle branch operations were relocated to the new structure in February 2008.

Between 2002 and 2004, the Seattle downtown core went through a comprehensive evaluation to determine whether a Monorail system could be constructed between Ballard and West Seattle. As part of the Monorail project, an Environmental Impact Statement ("EIS") was finalized and public comments were taken regarding potential impacts on historical resources in the area. The Monorail EIS discussed the possible demolition of the FRB building and identified documentation of the building's history as the appropriate mitigation effort.

When the Monorail project was abandoned, the FRB began investigating other options for disposing of the building. The FRB contacted the Washington State Historic Preservation Officer ("SHPO") in 2005 to develop an historic preservation plan in the event the FRB sold the building. The FRB offered to document the building's history (the same

---

[1] The Court has considered all of the materials produced to date in deciding this matter. Plaintiff correctly argues that the FRB took "final agency action" when it entered into a binding purchase and sale agreement on August 6, 2008. Whether the FRB complied with NEPA and/or NHPA before taking action will be decided based on what occurred prior to that date. The Court need not ignore the current posture of the case, however. See Sierra Club v. U.S. Army Corps of Engineers, 446 F.3d 808, 816 (8th Cir. 2006). In response to plaintiff's lawsuit, the FRB has twice renegotiated the purchase and sale agreement, assessed the environmental repercussions of alternative actions, and provided public comment opportunities. The Court has considered all of the information provided when determining whether and to what extent remedial action is appropriate. "Defendant's Motion for Leave to Introduct Extra-Record Materials" (Dkt. # 49) and "Plaintiff's Contingent Motion for Leave to Introduce Extra-Record Materials" (Dkt. # 58) are GRANTED.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                -2-

mitigation approved during the Monorail project), but SHPO asked that other mitigation measures, such as a public lecture on the building's history or the development of an on-line resource regarding the building, be considered.  During the same time period, the FRB decided to nominate its building for consideration by the Seattle Landmarks Preservation Board ("LPB") to determine whether the building is a city landmark.  The FRB disclosed that it had moved out of the building, hoped to sell the property, and needed to resolve its landmark status before moving ahead with a purchase and sale agreement.  The LPB requested additional information, which was provided in April 2008.  The LPB staff recommended that the nomination be rejected and expressly noted that failure to approve the nomination would preclude another nomination of the building for five years unless the owners consented to another nomination.  When the LPB rejected the nomination on June 4, 2008, FRB's in-house counsel congratulated its historic preservation consultant on her "success at the City's Landmarks Board."  AR 516.

Having resolved the building's landmark status, the FRB finalized its Memorandum of Agreement ("MOA") with SHPO and the City of Seattle Historic Preservation Program.  The MOA acknowledged that the building would be sold and imposed on the FRB an obligation to document the property, update the state's historic property inventory form, and develop an on-line illustrated essay regarding the building.  Less than three weeks later, the FRB selected a buyer for the property.  On August 6, 2008, the FRB entered into a binding purchase and sale agreement with the undisclosed buyer.

At some point, Arthur M. Skolnik, the president of plaintiff, learned that an MOA had been signed regarding the building.  Skolnik contacted the FRB at the end of September and/or early October questioning the procedures used to determine that the building need not be preserved.  When the FRB failed to respond, Skolnik contacted SHPO directly.  SHPO, citing "additional information from a concerned member of the public," requested that the FRB amend the MOA to include protective covenants in the title of the building.  AR 771.

Plaintiff filed this lawsuit on November 21, 2008.  The combination of SHPO's

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT           -3-

1  request and this lawsuit prompted the FRB to conduct additional public outreach regarding the
2  building's historic value under NHPA and to prepare an environmental impact statement under
3  NEPA.  On July 15, 2009, the FRB and the purchaser amended the purchase and sale agreement
4  to allow the FRB to impose an historic preservation covenant on the property if required at the
5  end of the NHPA and NEPA processes.  The amendment further provides that the buyer may
6  terminate the agreement if the preservation covenants imposed or the outcome of this litigation is
7  not acceptable to the buyer.  A draft EIS was issued on October 26, 2009, in which the agency
8  considered five alternatives:

9        Alternative A – Full Development, No Preservation
10       Alternative B – Office Tower Above Existing Building
11       Alternative C – Six Story Addition to Existing Building
12       Alternative D – Retain Existing Building, No Addition
13       Alternative E – No Action.

14 AR 1025-26.  The first four alternatives involve the sale of the building to another entity.
15 Alternative E "would involve retention of the property by the Bank and assumes office use of the
16 building . . . ."  AR 1026.  At oral argument, counsel represented that the EIS for the property
17 has been finalized.

18 **DISCUSSION**

19       Plaintiff asserts that the FRB failed to comply with the processes mandated by
20 NEPA and NHPA before agreeing to sell the building on August 6, 2008.  Because there is no
21 private right of action under NEPA or NHPA, plaintiff seeks review of the agency's actions
22 under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.  In particular, plaintiff relies
23 on § 706(2), which provides that the "reviewing court shall . . . hold unlawful and set aside
24 agency action, findings, and conclusions found to be . . . arbitrary, capricious, and abuse of
25 discretion, or otherwise not in accordance with law [or] without observance of procedure
26 required by law . . . ."  Because this is a record review case, the Court may grant summary

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT      -4-

judgment to either party based on a *de novo* review of the administrative record.  Pit River Tribe v. U.S. Forest Serv., 469 F.3d 768, 778 (9th Cir. 2006).

**A.  "Final Agency Action"**

Pursuant to § 704 of the APA, the Court has jurisdiction to review only "final agency actions."  5 U.S.C. § 704.  An action is "final" when it marks the "'consummation' of the agency's decisionmaking process" and determines rights, obligations, or legal consequences.  Bennett v. Spear, 520 U.S. 154, 177-78 (1997).

The purchase and sale agreement entered on August 6, 2008, satisfies both elements.  The FRB's decision to sell the building and solicit bids culminated in the selection of a buyer and the signing of a purchase and sale agreement. The agreement guarantees to the purchaser the transfer of the building unless the purchaser, in his, her, or its discretion, chooses to terminate the agreement.  Rights and obligations were established as between the parties.  The fact that the FRB has amended the agreement in response to plaintiff's challenge does not convert the original, binding purchase and sale agreement into a tentative or interim action.  If the agency has issued a definitive statement of its position, determining the rights and obligations of the parties, that action is final for purposes of judicial review despite the "possibility of further proceedings in the agency" to resolve additional issues.  Bell v. New Jersey, 461 U.S. 773, 779-80 (1983).  The question, then, is whether the FRB complied with NEPA and/or NHPA when it agreed to sell the building on August 6, 2008.

**B.  National Environmental Policy Act ("NEPA")**

NEPA is a procedural statute:  it sets forth the procedures a federal agency must use in evaluating the environmental impacts of its proposed actions.  The statute does not impose any substantive requirements or obligate the agency to undertake any particular remedial or protective actions.  See Lands Council v. McNair, 537 F.3d 981, 1000 (9th Cir. 2008).  Pursuant to NEPA, federal agencies must:

  (C)  include in every recommendation or report on proposals for legislation and other

> major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on –
>
> (i)  the environmental impact of the proposed action,
>
> (ii)  any adverse environmental effects which cannot be avoided should the proposal be implemented,
>
> (iii)  alternatives to the proposed action,
>
> (iv)  the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
>
> (v)  any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(2)(C).

### 1. Agreement to Sell the Building

The parties are in apparent agreement that sale of the building would be a "major Federal action[] significantly affecting the quality of the human environment" and is, therefore, subject to NEPA. The FRB entered into the August 6, 2008, purchase and sale agreement without assessing the environmental impact of the sale or alternatives to the proposed action. The agency argues that this omission does not constitute a violation of NEPA because it is authorized to take certain actions toward implementing its preferred outcome prior to or concurrent with the NEPA review. Under the FRB's theory, "[t]he question is simply *when* NEPA applies." Dkt. # 59 at 3 (emphasis in original).

Generally, agencies are not supposed to undertake any major federal action affecting the quality of the environment until the environmental impact statement is completed. 40 C.F.R. § 1506.1. There are exceptions to the general rule, however. The agency is permitted to take actions that will not have an adverse impact on the environment and will not limit the choice of a reasonable alternative. 40 C.F.R. § 1506.1(a). "Interim action prejudices the

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                -6-

ultimate decision on the program when it tends to determine subsequent development or limit alternatives." 40 C.F.R. § 1506.1(c)(3).  By irrevocably committing to sell the building on August 6, 2008, the FRB clearly limited its choice of alternatives.  The agency cannot, consistent with the purchase and sale agreement (or any of its amendments) retain and adapt the building for its own uses or lease/transfer the building to another federal agency.[2]  "The existence of reasonable but unexamined alternatives renders an EIS inadequate."  'Ilio'ulaokalani Coalition v. Rumsfeld, 464 F.3d 1083, 1097 (9th Cir. 2006).  Although adaptive use and transfer to another agency may ultimately prove unappealing to the agency, the purpose of NEPA is to ensure that the environmental impacts of the FRB's options are evaluated and quantified before resources have been committed or "the die otherwise cast."  Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 349 (1989).[3]  Because the FRB's precipitous signing of a sale agreement in August 2008 limited the reasonable alternatives available to the FRB, the assessment of environmental impacts should have been performed before that date.  The failure to do so constitutes a violation of NEPA.

**2. Nomination to Seattle Landmark Preservation Board**

Plaintiff argues that the FRB's nomination of the building as a city landmark independently triggered the obligation to conduct an environmental assessment.  Plaintiff does

---

[2] The FRB acknowledges that "if the buyer who signed the Amended [Purchase and Sale Agreement] accepts all covenants, conditions, and restrictions that the Bank might impose following completion of NEPA and NHPA review, the Bank cannot sell it to a different party, such as a governmental agency."  Dkt. # 59 at 7.

[3] The FRB argues that, as long as all potential preservation measures remain viable options under the sale agreement, it should not matter whether title is held by the FRB, another federal agency, or the undisclosed buyer.  Dkt. # 59 at 7.  No authority is cited for this proposition, and it is belied by the FRB's subsequent decision to include a "no action/no sale" alternative in the draft EIS.  From a preservationist's perspective, continuing federal ownership may be the preferred option if for no other reason than that NEPA and NHPA would continue to protect the resource at issue.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                -7-

not identify the "major Federal action[] significantly affecting the quality of the human environment" at issue. 42 U.S.C. § 4332(2)(C). The Landmark Preservation Board process involved the hiring of a consultant and the submission of a written nomination. The only conceivable environmental impact was the use of paper and funds. The Court finds that the filing of a form as part of the agency's attempt to undertake a "major Federal action" is not, in and of itself, a "major Federal action." To hold otherwise would necessitate an environmental assessment of every incremental step toward a final agency action. Plaintiff's NEPA claim fails to the extent it is based on the FRB's nomination to the LPB.

**C. National Historic Preservation Act ("NHPA")**

**1. Section 106**

Section 106 of NHPA requires that federal agencies take into account the effect of any federal undertaking on buildings, such as the Seattle branch building, that are eligible for inclusion in the National Register. 16 U.S.C. § 470f. As part of the § 106 process, the FRB was required to "seek and consider the views of the public." 36 C.F.R. § 800.2(d). See also 36 C.F.R. §§ 800.3(e) and 800.6(a)(4). Although the FRB recognized that NHPA was in play and consulted with state, city, and tribal representatives to avoid or mitigate adverse effects on historic properties, it did not attempt to involve the public in the process.

The FRB argues that it was entitled to rely on the extensive public comments received during the Monorail EIS process between 2002 and 2004. While the agency has discretion to decide how and when to involve the public in its decisionmaking, neither the governing regulations nor common sense supports the argument that it can rely on comments received during an entirely separate § 106 process. Agencies are required to make information regarding "the undertaking" available to the public and to seek public comment and input "in a manner that reflects[, among other things,] the nature and complexity of the undertaking . . . and the relationship of the Federal involvement to the undertaking." 36 C.F.R. §§ 800.2(d) and 800.3(e). The agency is specifically required to seek the public's views on resolving adverse

effects of the undertaking and should "consider the extent of notice and information concerning historic preservation issues afforded the public at earlier steps in the section 106 process when resolving adverse effects . . . ."   36 C.F.R. § 800.6(a)(4).

In sharp contrast to the EIS performed for the Monorail, the "undertaking" at issue here is fairly narrow and involves the proposed sale and demolition of a single federal building. The amount of information provided to the public regarding the building, and the manner in which comments are taken and considered, would necessarily depend on whether the building is one of many affected properties or is the only resource at risk.  The current undertaking has the federal government as the dominant entity, whereas the Monorail project involved numerous organizations and entities not under federal control.  All of these factors suggest that the notice and comment opportunities provided during the Monorail project differed materially from what could be expected in the present situation.

The fact that the agency is directed to consider public comments received "at earlier steps in the section 106 process" does not suggest that the FRB has the authority to forego public involvement in reliance on public comments received regarding a different project.  To hold otherwise would encourage agencies to rely on stale public comments that may not be relevant, as is the case here.  The FRB contends that it relied on an EIS performed five years earlier when the only reasonable alternative was sale to the Monorail organization and demolition, not adaptive reuse or transfer to another federal agency.  Consideration of comments regarding a different proposal with a different purpose in a different § 106 process does not absolve the agency of its public involvement obligations.  The Court therefore finds that the agency's exclusive reliance on the Monorail EIS was "not in accordance with law [and was] without observance of procedure required by law . . . ."  5 U.S.C. § 706(2).

Plaintiff has not presented any logical theory under which the nomination of the building for city landmark status before the LPB triggered the § 106 process.  The FRB's action – hiring a consultant and submitting a nomination packet – did not have "the potential to cause

ORDER GRANTING PLAINTIFF'S MOTION  
FOR SUMMARY JUDGMENT                    -9-

effects on historic properties" or "alter, directly or indirectly, any of the characteristics of a historic property that qualify the property for inclusion in the National Register." 36 C.F.R. §§ 800.3(a) and 800.5(a)(1). Plaintiff's NHPA claim fails to the extent it is based on the nomination to the LPB.

**2. Section 110**

Section 110 of NHPA provides in relevant part:

> The heads of all Federal agencies shall assume responsibility for the preservation of historic properties which are owned or controlled by such agency. Prior to acquiring, constructing, or leasing buildings for purposes of carrying out agency responsibilities, each Federal agency shall use, to the maximum extent feasible, historic properties available to the agency . . . .

16 U.S.C. § 470h-2(a)(1). To the extent § 110 imposes a general duty to preserve historic properties, it is too broad to be the basis for the injunctive relief sought in this case and/or the FRB satisfied its obligations when it consulted with state, city, and tribal representatives to develop a mitigation plan. The more specific duty related to use of available historic properties does not apply in this case: the FRB was not "acquiring, constructing, or leasing buildings for purposes of carrying out agency responsibilities."[4] Plaintiffs cannot, therefore, obtain relief under § 110 of NHPA.

**3. Section 111**[5]

Through § 111 of NHPA, Congress mandated that all federal agencies shall:

---

[4] The "final agency action" at issue in this case is the agreement to sell the building on August 6, 2008. Plaintiff has not challenged the FRB's earlier decisions to purchase property in Renton and/or to relocate its operations to the new facility.

[5] The FRB objects to plaintiff's argument regarding § 111 of NHPA on the ground that § 111 was not specifically cited in the complaint. Plaintiff has, however, alleged general violations of NHPA, including the failure to preserve historic properties. Had the FRB actually been confused about the nature of plaintiff's NHPA claim, it could have sought a more definite statement or served contention interrogatories. The FRB's objection based on the adequacy of plaintiff's pleading is overruled.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                    -10-

> to the extent practicable, establish and implement alternatives for historic properties, including adaptive use, that are not needed for current or projected agency purposes, and may lease an historic property owned by the agency to any person or organization, or exchange any property owned by the agency with comparable historic property, if the agency head determines that the lease or exchange will adequately insure the preservation of the historic property.

16 U.S.C. § 470h-3(a). The FRB argues that this provision is inapplicable because it is not considering a lease or exchange of the property. That, however, is exactly plaintiff's point. Pursuant to § 111, the FRB should have considered adaptive use and/or a lease arrangement before deciding to transfer ownership of the historic property to a third party.

The question, therefore, is whether a violation of § 111 is actionable under the APA. The FRB points out that no court has ever set aside agency action because the agency violated § 111. The congressional directive to at least consider, if not implement, adaptive use or lease strategies to protect historic properties is clear, however, and the failure to do so would constitute a violation of NHPA. Because there is no evidence in the record that the agency considered adaptive use, lease, or exchange before committing to sell the building on August 6, 2008, the agency's action was "not in accordance with law." 5 U.S.C. § 706(2).

**D.  Executive Orders 11593 and 13006**

Executive Order 11593 directs federal agencies to "initiate measures necessary to direct their policies, plans and programs in such a way that federally owned sites, structures, and objects of historical, architectural or archaeological significance are preserved, restored and maintained for the inspiration and benefit of the people." Executive Order 13006 directs the federal government to "utilize and maintain wherever operationally appropriate and economically prudent, historic properties . . . ." Plaintiff argues that the FRB should have considered these directives before agreeing to sell the building.

Plaintiff has not shown that it has a direct cause of action under the Executive Orders. Executive Orders are generally regarded as management tools used by the President to

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                     -11-

control the activities of federal agencies and hold executive branch entities accountable. To be judicially enforceable, an Executive Order must have the force and effect of law, *i.e.*, it must be issued "pursuant to a statutory mandate or delegation of authority from Congress" to the President. Independent Meat Packers Ass'n v. Butz, 526 F.2d 228, 234 (8th Cir. 1975). Plaintiff has not identified the authority under which Executive Orders 11593 or 13006 were issued. At least one court has determined that neither NEPA nor NHPA contain a delegation of authority or a directive to issue orders such as Executive Order 11593. Nat'l Indian Youth Council v. Andrus, 501 F. Supp. 649, 680 (D.N.M. 1980).

Nor has plaintiff shown that it is entitled to relief under the APA. Both Executive Orders urge agencies to safeguard historic resources, but they are not specific regarding process or substance, leaving a great deal of discretion with the agency. In addition, compliance with the general directive of Executive Order 13006 is contingent on operational and fiscal considerations within the agency. Absent language requiring discrete actions or processes, the Court has no standard by which to evaluate the FRB's conduct and cannot, therefore, find that the steps taken (such as consultation with state, city, and tribal representatives) were insufficient under the Executive Orders.

**E. Remedy**

Having found that the FRB violated both NEPA and NHPA when it entered into a binding agreement to sell the building on August 6, 2008, the Court must determine an appropriate remedy. Plaintiff seeks an order invalidating the purchase and sale agreement.[6] The

---

[6] Plaintiff also seeks an order directing the FRB "as owner of the Seattle Branch Building, to notify the Seattle Landmarks Preservation Board pursuant to Seattle Municipal Code section 25.12.850A that the FRB agrees that a new proceeding may be commenced without regard to the ordinance's five year bar on nominations by the public without the owner's consent and, further, that the determination obtained by the FRB that the structure should not be designated a City Landmark should be withdrawn." Dkt. # 48 at 32-33 (footnote omitted). Plaintiff has not shown that the nomination of the building violated the law or was otherwise arbitrary. This requested relief is denied.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                -12-

1 FRB argues that injunctive relief is not available because the additional assessment and public
2 comment opportunities it has undertaken since August 6, 2008, prevent plaintiff from
3 establishing irreparable harm.[7]

4 The FRB has taken steps to ameliorate the effects of its statutory violations. The
5 FRB has finalized an EIS for the building, amended the purchase and sale agreement to allow for
6 the imposition of preservation covenants, and solicited and considered public comments
7 regarding the proposed sale. The injury arising from the failure to consider all reasonable
8 alternatives under NEPA and § 111 of NHPA has not been fully remedied, however. Under the
9 amended purchase and sale agreement, the agency is committed to selling the building to a third
10 party. The agreement effectively shuts off the possibilities of adaptive reuse by the FRB or
11 transfer to another federal agency. The FRB asserts that "alternatives under consideration in [its
12 current EIS undertaking] include retention of the Building by the Bank." Dkt. # 50 at 38. While
13 it is true that the FRB has included a "no action/no sale" alternative in its EIS documents, the
14 purchase and sale agreement, even as amended, prejudices the ultimate decision on the program.
15 The FRB has not identified, and the Court has not found, any provision of the amended contract
16 that would allow the FRB to act upon the "no action/no sale" alternative if it were selected.
17 Thus, the pending sale agreement tends to limit the options available to the agency and/or
18 precludes a fair evaluation of all reasonable alternatives.

19 **CONCLUSION**

20 For all of the foregoing reasons, the Court finds that the FRB's agreement to sell
21 the Seattle Branch Building of the Federal Reserve Bank of San Francisco was not in accordance
22 with NEPA or NHPA and was without observance of procedure required by law. Plaintiff's

---

[7] Injunctive relief is available only if, after demonstrating a violation of law, plaintiff also shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay v. MercExchange, 547 U.S. 388, 391 (2006).

1  motion for summary judgment is GRANTED and defendant's cross-motion is DENIED.
2  Pursuant to 5 U.S.C. § 706(2), the Court holds unlawful and sets aside the August 6, 2008,
3  purchase and sale agreement and its amendments.  Whether the environmental assessment and/or
4  public involvement activities initiated by the FRB after August 6, 2008, are sufficient under the
5  governing statutes or whether they will be subject to later challenge is not properly before this
6  Court and cannot be determined on the record presented.

8  Dated this 19th day of March, 2010.

   *(signature)*
   Robert S. Lasnik
   United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT            -14-